UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CATHY HOOD YEAGER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: **2:15-CV-1456-RDP** |
| } | |
| **CAROLYN W. COLVIN,** Acting } | |
| **Commissioner, Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Cathy Hood Yeager brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability and disability insurance benefits ("DIB"). *See also*, 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for disability and DIB on April 5, 2012. (Tr. 100, 174-175). Plaintiff alleged her disability began on November 29, 2011. (Tr. 191). Plaintiff's application was initially denied by the Social Security Administration on September 21, 2012. (Tr. 27). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 18, 2012, received a hearing before an ALJ on October 30, 2013, and was denied DIB on February 26, 2014. (Tr. 27, 37, 42). The ALJ determined that, contrary to her allegations, Plaintiff had not been under a disability as defined in the Act since November 29, 2011, the alleged onset date.

(Tr. 37). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.    Facts

Plaintiff was fifty-nine years old at the time of the hearing. (Tr. 49). Plaintiff alleges that she has been disabled since November 29, 2011 because of complications from surgery on her right knee. (Tr. 53). Additionally, Plaintiff stated at her hearing that she suffers from anxiety and depression that was exacerbated by the death of her grandson in June 2013. (Tr. 60-61). Plaintiff has a high school education (Tr. 49). She performed past relevant work as a sales associate/stocker for Gap and Banana Republic (Tr. 50), a secretary for the Jefferson County Board of Education (*Id.*), and as a receptionist for Cahaba Heights Elementary and Gresham Elementary (Tr. 51).

During her alleged period of disability, Plaintiff received treatment from two treating physicians: Drs. David Buggay and Mark Westfall. (Tr. 253, 315, 318-20, 326-49, 358-61, 367-84, 389-92, 397-99, 403-05, 409-11, 427-37, 440-43, 447-53, 543-45, 547-50). Dr. Buggay performed several knee operations on Plaintiff and assisted in her recovery; Dr. Westfall is a psychologist who treated Plaintiff for depression and anxiety. For organizational reasons, the court initially reviews Plaintiff's history with Dr. Buggay.

On November 29, 2011, Dr. Buggay performed total knee replacement surgery on Plaintiff. (Tr. 316). On April 25, 2012, Dr. Buggay reviewed Plaintiff's progress. He opined that her alignment was fine, and noted a complication caused by arthrofibrosis may require revisionary surgery. (Tr. 236). During this visit, Dr. Buggay proscribed Lortab and wanted Plaintiff to "really us[e] them sparingly." (*Id.*).

Dr. Buggay performed a revision on Plaintiff's right knee on July 24, 2012. (Tr. 376). A post-operative check-up on August 3, 2012 revealed that Plaintiff "is status post revision and doing well." (Tr. 373). Dr. Buggay recorded that Plaintiff was "neurologically intact" and that "[t]he wound looks good." (*Id.*). Plaintiff was to continue wearing her Dynasplint and was given OxyIR for pain. (*Id.*). Twenty days later, Plaintiff was still doing well. (Tr. 371). Though she still had a 10 degree contracture, a physical examination "overall notes progress." (*Id.*). Plaintiff was to continue taking pain medication and continue her therapy.

During an October 22, 2012 visit, Dr. Buggay continued to note "[s]low but steady progress" with Plaintiff's knee recovery. (Tr. 367). Dr. Buggay reported "I have refilled her Lortab and Baclofen and we talked about coming off of this in the next month or so and maybe moving forward with accepting what we have left as far as the stiffness and discomfort." (*Id.*).

Dr. Buggay completed a Physical Capacities Evaluation ("PCE") on November 1, 2012. (Tr. 364). He noted that during an eight-hour work day, Plaintiff could only sit, stand, or walk for a maximum of four hours. (*Id.*). Dr. Buggay opined that Plaintiff would have no issue using her upper body, but could only use her left foot for foot controls. (*Id.*). Dr. Buggay reported that Plaintiff could occasionally lift up to twenty pounds, but should never lift any more than that. (Tr. 366). Dr. Buggay further reported that Plaintiff should never climb, balance, stoop, kneel, crouch, or crawl. (*Id.*).

Progress notes dated March 13, 2013 indicate Plaintiff was out of her cast and that Plaintiff "feels like she is doing fairly well." (Tr. 447). Dr. Buggay opined Plaintiff "does have mild pain in her knee basically constantly from the contracture. It does increase if she sits for long periods of time. She has been doing her exercises, riding her exercise bike." (Tr. 447). Dr.

Buggay concluded that, given her twenty degree contracture, Plaintiff was "doing quite well." (Tr. 447).

During a September 25, 2013 follow up, Plaintiff reported she was off her pain medication. (Tr. 549). Although she was tolerating her symptoms, she indicated she was still having "difficulty standing, stair climbing as well as walking." (*Id.*).

On November 28, 2011, Dr. Westfall recorded that Plaintiff exhibited appropriate behavior, a logical thought process, normal speech, good insight, good judgment, and responded well to her current medication. (Tr. 253). Though some parts of the note are difficult to read, it seems Plaintiff's depression and anxiety were well under control with medication. (*Id.*). Dr. Westfall noted in May 2012 that Plaintiff "continues to be in remission." (Tr. 411).

On November 1, 2012, however, Dr. Westfall submitted a physician's report to the Social Security Administration. (Tr. 406-08). Dr. Westfall opined that Plaintiff's depression was severe enough to meet Listing 12.04, and that even a minimal increase in mental demands would cause Plaintiff to decompensate. (Tr. 407-08).

On November 16, 2012, Dr. Westfall completed another progress note. (Tr. 410). Again, the notes are difficult to interpret. However, it appears that Plaintiff's depression returned due to her "chronic pain," "hyperphysical function loss," and her unfavorable disability outcome. (*Id.*).

On May 16, 2013, Dr. Westfall reported that Plaintiff's mood had improved. Her pain was unchanged, but she was adapting to it. (Tr. 545). However, Plaintiff reasonably worsened in July 2013, after her four-year-old grandson died of SIDS while at her home one night. (Tr. 548). She seemed to suffer from anxiety and feelings of guilt over the incident. (*Id.*).

Plaintiff's last recorded visit with Dr. Westfall happened on August 26, 2013. (Tr. 554). Plaintiff stated "she is doing much better than last visit," as she was beginning to process her

grief. (*Id.*). Dr. Westfall noted that she "has good days [and] bad days," and continued her current medication. (*Id.*).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has the severe impairment of "status post multiple surgeries of the right knee." (Tr. 30). However, the ALJ further determined that Plaintiff "does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1," noting that:

> The evidence of record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet or equal any of the listed impairments. Additionally, there are no opinions in the record from medical experts or any other type of medical or psychological consultants, who have been designated by the Commissioner, which indicate that [Plaintiff]'s impairments, alone or in combination, meet or equal a listing.

(Tr. 34). The ALJ then found that Plaintiff "has the residual functional capacity to perform light work that allows for occasional stooping and crouching. She cannot climb or use her right leg for pushing and pulling movements." (*Id.*). In light of this RFC determination, the ALJ concluded that Plaintiff is capable of performing past relevant work as a school secretary, receptionist, bank teller, and telephone orderer and has not been under a disability, as defined in the Social Security Act, from November 29, 2011, through the date of this decision. (Tr. 36-37).

IV.     **Plaintiff's Argument for Reversal**

Plaintiff makes two arguments on appeal: (1) the ALJ erred by not giving substantial weight to Dr. Buggay's PCE (Pl.'s Mem. 8); and (2) the ALJ erred by not contacting Dr. Buggay prior to finding his PCE inconsistent (Pl.'s Mem. 10).[1]

V.      **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

---

[1] Plaintiff also appears to suggest in her brief that Dr. Westfall's opinion letter is also a basis to remand. (Pl.'s Mem. 11). However, no citations or substantive argument has been offered as to why Dr. Westfall's letter or opinions are entitled to substantial weight. The Eleventh Circuit is clear that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.I.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998); *see also*, *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting claimant waived issue because he did not elaborate on claim or provide citation to authority regarding claim). As with the ALJ's rejection of Plaintiff's pain testimony and the ALJ's determination that Plaintiff's depression is a non-severe impairment, the court finds that Plaintiff has not substantively challenged these findings; therefore, the issue waived and the court accepts the ALJ's determination. Moreover, and in any event, the record provides ample evidence to support the ALJ's decision to discount Dr. Westfall's opinion that Plaintiff was "unable to work," particularly for any consecutive twelve-month period. (Tr. 32). Dr. Westfall's opinion is contrary to his own clinical findings, his conservative treatment of Plaintiff, and the record as a whole. (Tr. 32-33, 253, 409-11, 545, 547-48). *See* 20 C.F.R. § 404.1527(c)(2)-(4); *Crawford v. Commissioner, Soc. Sec. Admin.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Finally, Dr. Westfall's opinion relates to an issue reserved for the Commissioner and, therefore, was not entitled to any special deference or consideration. (Tr. 409). *See* 20 C.F.R. § 404.1527(d)(1); SSR 96-5; *Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986); *Denomme v. Commissioner, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

### A. The ALJ Had Good Cause to Reject Dr. Buggay's PCE Findings.

It is well-established in the Eleventh Circuit that "'the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.' [However, a] treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, at 1140 (11th Cir. 1997), *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

In the present case, Dr. Buggay's PCE report is the only instance in the record where he spoke directly to Plaintiff's capacity to work. The ALJ rejected Dr. Buggay's report because it "appears to be inconsistent with the evidence of record as a whole and largely based upon [Plaintiff]'s subjective allegations, which are not fully credible." (Tr. 36). Dr. Buggay's other medical records never stated a limitation for Plaintiff's capacity to sit, stand, or walk. (*See* Tr. 365). Dr. Buggay never opined reasons in the medical record as to why Plaintiff would be restricted to "never" climb, balance, stoop, kneel, crouch, or crawl. (*See* Tr. 366). Furthermore,

Dr. Buggay noted that after her second surgery Plaintiff was doing well, was neurologically intact, and had objective evidence of a good knee alignment.  (Tr. 367, 369, 373, 447-49, 549-50).

Without objective medical evidence to support Dr. Buggay's opinions in the PCE, it was reasonable for the ALJ to conclude that Dr. Buggay stated those limitations based on conversations he had with Plaintiff.  But Dr. Buggay's opinion is inconsistent with other record evidence (Tr. 30-36; 253; 299; 379-81; 389; 410-11; 458-86; 488-541, 545, 547-48), and also Plaintiff's activities.  (Tr. 30-31, 33, 36).  The ALJ had good cause to reject most of Dr. Buggay's conclusions from his PCE,[2] given that Dr. Buggay's remarks were not supported by substantial evidence.  *See Crawford*, 363 F.3d at 1159 (where the Eleventh Circuit found good cause existed to give a treating physician's opinion lower weight because the physician noted the claimant was "doing well," was in "no acute distress," and testing revealed no "musculoskeletal abnormalities.").

## B. The ALJ was Under No Obligation to Contact Dr. Buggay.

Plaintiff argues in her brief that this case should be remanded because the ALJ was under an obligation to contact Dr. Buggay because questions existed regarding the basis of Dr. Buggay's conclusions in his PCE report.  (Pl.'s Mem. 8-9). The court disagrees.  The thrust of this argument comes from SSR 96-5p, which states "For treating sources, the rules require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the basis for such opinions are not clear to us."  SSR 96-5p, 1996 WL 374183 at *2.

---

[2] Further, even if the court were to determine that Dr. Buggay's opinion that Plaintiff could not use her right foot for repetitive movements is supported by objective medical evidence, this is harmless error as none of the past prior work the ALJ determined Plaintiff could perform required the operation of foot controls.  (Tr. 36-37, 365).

However, Plaintiff's argument ignores both the PCE report itself and the relevant regulations. Doctors are asked to complete the PCE report "based on [their] clinical evaluation, other testing results, client discussions and/or medical treatment." (Tr. 365). The PCE form outlines what formed the basis of Dr. Buggay's opinions, removing the need for the ALJ to inquire on that issue.

Furthermore, the Social Security Administration has changed its regulations on this issue. The latest relevant rule change stipulated that:

> We are modifying the requirement to recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided. Depending on the nature of the inconsistency or insufficiency, there may be other, more appropriate sources from whom we could obtain the information we need. By giving adjudicators more flexibility in determining how best to obtain this information, we will be able to make a determination or decision on disability claims more quickly and efficiently in certain situations.

77 Fed. Reg. 10,651-01 (Feb. 23, 2012). This modification allows the ALJ more latitude when determining whether the record is sufficient to determine if a claimant is disabled. Here, the ALJ did not err by not contacting Dr. Buggay, particularly given the fact that substantial evidence supports the ALJ's determination that good cause exists to give little weight to Dr. Buggay's report.

**VII. Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 29, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE